### Ex Parte Woodrow Wilson SMITH.

### No. 48804.

Court of Criminal Appeals of Texas.

Sept. 24, 1974.

Pierce P. Stacy, III, Bryan, for appellant.

W. T. "Tom" McDonald, Jr., Dist. Atty., J. Bradley Smith, Asst. Dist. Atty., Bryan, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

This is a post-conviction habeas corpus proceeding brought under the provisions of Article 11.07, Vernon's Ann.C.C.P., by petitioner, an inmate of the Texas Department of Corrections.

Petitioner was convicted of being an accomplice to murder with malice in Cause No. 9574, 85th District Court of Brazos County, on June 13, 1964. Punishment was assessed at 99 years. No appeal was perfected from this conviction.

Petitioner filed an application for the writ of habeas corpus alleging, inter alia, that the State improperly introduced in evidence, over his objections, the confession of one Willie Coverson, indicted as a principal offender, which denied petitioner his right to confrontation and cross-examination of the witness. When the writ was filed in our Court, we found that the record, and particularly the transcript of the evidence, was incomplete, and since the writ raises a serious contention of constitutional dimensions we returned the proceeding to the trial court with instructions to hold a hearing to complete the record.

Such hearing was had, and the complete record is now before us. By order of May 24, 1974, this Court found all claims in petitioner's application to be without merit except the contention pertaining to the admission of Coverson's confession, which raises a substantial constitutional question of law. See Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed. 1100 (1968); Evans v. State, 500 S.W.2d 846 (Tex.Cr.App.1973); Hearne v. State, 500 S.W.2d 851 (Tex.Cr.App.1973); Schepps v. State, 432 S.W.2d 926 (Tex.Cr.App., opinion on State's Motion for Rehearing (1968)).

This Court thereupon set this cause for submission, limiting the issues to the following:

(1) Was the petitioner denied his Sixth Amendment right to confrontation and cross-examination by the admission in evidence of co-indictee Coverson's confession, over petitioner's objection that it was hearsay?

(2) If the admission into evidence was error in violation of the petitioner's Sixth Amendment rights to confrontation and cross-examination, was the error harmless beyond a reasonable doubt in view of the other evidence submitted by the State?

The indictment, returned into court March 31, 1964, alleged in substance that on or about November 25, 1963, in Brazos County, John P. Allen, Willie Lee Coverson, and Howard Connally, acting together unlawfully and with malice aforethought killed Thomas McGee by shooting him with a gun; and that petitioner Woodrow Wilson Smith was an accomplice to said killing in that, although not present at the commission of the offense, he advised, encouraged, and commanded the principal offenders to kill deceased. Petitioner was the sole defendant to be tried in the instant trial.

In order to sustain its burden to prove beyond a reasonable doubt the guilt of the principal Willie Lee Coverson,[1] the State placed in evidence the judgment of conviction of Coverson of the murder of deceased. This judgment was admissible as evidence of Coverson's guilt as a principal offender. Tucker v. State, supra, and authorities there cited. In addition, over petitioner's hearsay objections, the State placed in evidence Coverson's written confession, reading in part as follows:

"On November 23, 1963, the date that they buried the President, Howard Connally, John Allen, Woodrow Smith and myself all went to Bryan, Texas. We went in two different cars. I rode with Howard Connally in Howard's 1955 Buick, white looking. John Allen and Woodrow Smith went in a brown looking Dodge, Plymouth, or DeSoto. I don't know just what kind of car it was but it was a Chrysler product. I don't know what time it was when we arrived in Bryan, but it was sometime just before dark. Both of the cars stopped near a cafe in Bryan. Woodrow Smith and John Allen got out of their car and came over and got in the car with us. We all four just drove around in Howard's car and Howard was doing the driving. This man Woodrow Smith told Howard, said 'There's the place, can you find it? Howard told him that he could. We then drove back to Bryan. This place that Woodrow pointed out was the place where the man lived that Howard was supposed to kill. After we got back to Bryan, John Allen and Woodrow Smith both got out of Howard's car. As they were leaving Smith said that he had to go to work—that he would see you in the morning. He was talking to Howard at the time . . . . ."

The foregoing portion contains the sole references in the confession to the actions of petitioner. In the remainder of the confession. Coverson told in detail of the manner in which deceased was shot and killed, naming Howard Connally as the ac-

---

1. See Tucker v. State, Tex.Cr.App., 461 S.W.2d 630; Schepps v. State, supra.

tual killer, and implicating himself as a principal.

Coverson did not testify, and petitioner had no opportunity to cross-examine him.

■ The general rule of law with regard to confessions made by one party in the absence of the accused has long been that a confession of guilt can be used only against the confessor, and is inadmissible against others under the hearsay rule; and its use in evidence against one other than the person making the confession is a violation of the right of confrontation and cross-examination guaranteed by the Sixth Amendment. See McCormick & Ray, Texas Law of Evidence, 2d Ed., Sec. 1219, p. 96; Evans v. State, supra; Hearne v. State, supra; Carey v. State, Tex.Cr.App., 455 S.W.2d 217; Schepps v. State, supra; Bruton v. United States, supra; Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed. 2d 314; Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923; Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255. An exception to this rule applicable under certain circumstances when an accomplice is on trial separately from his principal has been discussed by this Court in Schepps v. State, supra (opinion on State's Motion for Rehearing); Tucker v. State, Tex.Cr.App., 461 S.W.2d 630; Chapman v. State, Tex. Cr.App., 470 S.W.2d 656; and in Griffin v. State, Tex.Cr.App., 486 S.W.2d 948. Reference is made to those authorities for such discussions.

In Schepps v. State, supra, one of the grounds of error presented on appeal was whether Schepps, charged as an accomplice to the offense of printing and making a counterfeit cigarette stamp, was deprived of his federal constitutional right (Sixth and Fourteenth Amendments) to be confronted with the witnesses against him. See also Texas Constitution, Art. 1, Sec. 10, Vernon's Ann. At the defendant's trial, the extra-judicial confessions of three of the alleged principals named in the indictment, taken after their arrest and in the defendant's absence, were introduced in evidence over his objection that he was being deprived of his right of confrontation and cross-examination, and that said confessions were hearsay as to him. The confessions implicated Schepps as an accomplice to the offense. After a thorough discussion of the rules of law set forth in the immediately preceding paragraph hereof, a majority of the Court held the introduction of such confessions to be reversible error. See opinion on State's Motion for Rehearing. 432 S.W.2d 938.

In *Chapman*, supra, a trial of an accomplice wherein statements of the principal implicating the defendant were admitted in evidence, we said:

"In Schepps v. State, supra, on the State's motion for rehearing, two judges held that the introduction of such a confession implicating the accused violated his constitutional right of confrontation under the circumstances described. A third judge agreed with the reversal because of the court's refusal to excise the hearsay portion of the principals' confessions implicating the accused, the limiting charge being insufficient to remove the injury caused."

Two of the judges in Schepps dissented to the reversal, being of the opinion that the references in the principal's confession to appellant and the actual commission of the crime "were so interwoven with the acts of the principal that to excise them would render the confessions incomplete and fragmentary."

However, in Chapman, the Court said that it was unnecessary to decide whether *Schepps* controlled the decision there, since the admission in evidence of the statements of the principal offender was reversible error for other reasons.

In Griffin v. State, supra, we said:

"However, Bruton, supra, and Schepps, supra, both involved the admission of a defendant's confession without the deletion of references to his co-defendant. Such is not the case here.

\* \* \* \* \* \*

"We, therefore, conclude since deletion is an effective remedy, as is indicated by our opinion in Schepps, supra, and the 5th Circuit's case of Posey, supra,[2] no error is presented in the case at bar."

See also Browney v. State, 128 Tex.Cr. App. 81, 79 S.W.2d 311, 314.

■ In the instant case, the entire confession was in evidence. The portion of Coverson's confession implicating appellant was not so interwoven with that portion admitting the guilt of Coverson as a principal offender as to render the confession with the deletion of the part copied above incomplete and fragmentary. The confession was not necessary to prove the guilt of Coverson, since the judgment of his conviction was sufficient to establish his guilt, and appellant made no contest of that issue.

Under the facts and circumstances of the case, we hold that the petitioner was denied his Sixth Amendment right to the confrontation and cross-examination of Coverson due to the admission in evidence of that portion of Coverson's confession implicating petitioner as an accomplice over petitioner's objection that it was hearsay and violated his constitutional right of confrontation and cross-examination. Chapman v. State, supra; Schepps v. State, supra; Tucker v. State, supra; Griffin v. State, supra; Posey v. United States, supra.

We next come to the second question set for submission by this Court. Was the error of the court in admitting Coverson's confession in evidence harmless beyond a reasonable doubt, in view of the other evidence introduced by the State?

■ A constitutional error can, under some circumstances, be harmless constitutional error, provided the appellate court finds that from all the facts and circum-

stances in evidence the error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705; Harrington v. Califormia, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340; Carey v. State, Tex.Cr.App., 455 S.W.2d 217.

The record reflects that deceased was the uncle of petitioner. It was the State's position that petitioner had a short time before the killing forged deceased's name on certain applications for insurance on deceased's life with petitioner to be named as sole beneficiary, and that after policies had been issued, petitioner entered into an agreement with Willie Lee Coverson, Howard Connally, and John P. Allen that Connally would kill deceased, and that Connally would be paid for committing the offense and the proceeds of the policies would be split between the conspirators.

As proof of this conspiracy, the State placed in evidence a number of applications for life insurance, apparently signed by deceased, all asking that petitioner be named as sole beneficiary. Also in evidence were a number of life insurance policies on deceased issued as the result of such applications, all naming petitioner as sole beneficiary. Uncontradicted evidence of witnesses familiar with deceased's handwriting was to the effect that deceased's signatures on the applications were forgeries. Expert witnesses testified that such signatures were written by petitioner signing deceased's name.

The State introduced in evidence the written confession of petitioner, in which he admitted taking out an insurance policy on deceased, and agreeing with the killer that the victim would be killed and the conspirators would split the insurance money. A comparison of this confession with the portion of Coverson's statement implicating petitioner reveals that petitioner admitted every material fact stated by Cover-

2. Posey v. United States, 416 F.2d 545 (5th Cir. 1969).

son. Petitioner's confession, omitting the formal parts, is as follows:

"My name is Woodrow Wilson Smith. My address is 4202 Hatcher Street, Dallas, Texas. I am 40 years old. On or about November 25, 1963, it was around the time that the (sic) buried the President, John Allen, Willie Coverson, Howard Connally and I all went to Bryan, Texas. We all met at Allen's Cafe, Lagow and Spring Streets around noon. Me and John Allen went in my car which is a 1959 Plymouth, color tan and Willie Coverson and Howard Connally went in Howard Connally's 1955 or 1956 Buick. We all took off from the cafe at the same time and drove out onto Highway 75 and on down to Bryan. We got there sometime around the middle of the evening, about 3:00 pm and we parked somewhere on a side street and then we all got in Howard's car. We directed Howard out to where L. T. McGee lived which was out in the country. Both John Allen and I knew where L. T. McGee lived and as we drove down this country road one of us, either John or I, pointed this house out. I then asked Connally if he could find the house and I think that he said yes. Then we drove on back to Bryan and John Allen and I got back in my car and came on back to Dallas. A few days prior to going to Bryan me and John Allen had discussed an insurance policy that L. T. McGee was carrying which would have paid off $4,500.00 in the event L. T. was accidentially killed. This policy was carried by the Reliable Life Insurance Company and I had taken it out on L. T. McGee sometime around July, 1962. I had signed the name of Lynn McGee to it as that is the way that the insurance agent had me to sign it. At this time John Allen was in a financial strain and needed some money. He and I agreed that we would dispose of L. T. McGee so we could collect the money on the policy that was made payable to me. We discussed the manner in which it was to be

done and all the arrangements were left up to John Allen. John Allen was to pay Howard Connally to kill L. T. McGee and we all four drove to Bryan, Texas for the purpose of setting up the killing. I was going to let John Allen have four or five hundred dollars of the insurance money to get his business strait (sic) in his cafe.

"Two or three days after we had all been to Bryan, Texas I saw Howard Connally at a service station at Corinth and Eighth Streets in Dallas. Howard asked me if I had heard anything from that man down in Bryan, meaning L. T. McGee, and I told him that I had, that they had called me and told my wife that he had been murdered.

/s/ Woodrow W. Smith."

Other evidence established the fact that deceased was enticed from his home on the night in question by two men, and was shot and killed. Coverson and Connally were arrested in Connally's home on December 15, 1963, and a pistol was found under the bathtub in the house. A ballistics expert testified, after making tests, that two bullets taken from deceased's head were fired from this gun. Medical testimony was given that the wounds in the head caused by these bullets were the cause of death.

Petitioner at his trial vigorously challenged the voluntariness of his confession. A hearing in the absence of the jury was held by the court, and a number of witnesses testified concerning the giving of the confession. Petitioner testified that he did not voluntarily give his confession, but that he was hit, kicked, "cussed" and intimidated into making it.

After hearing the evidence of six officers present at various times during the giving of the confession, which testimony was contrary to that of petitioner, the court made findings that the confession was voluntarily made, and overruled petitioner's objections. The court granted petitioner's request that he be allowed to tes-

tify before the jury on the sole issue of the admissibility of his confession without making himself subject to cross-examination on any other issue. Petitioner repeated the substance of his previous testimony of abuse and coercion by the officer prompting him to sign the statement. Thereafter, all of the officers participating in or present at the time of the giving of the confession testified denying the use of any force or coercion in the taking of the confession, and stating facts to establish that the confession was voluntarily made by petitioner. The issue of voluntariness was submitted to the jury in the court's charge.

Since the only evidence linking Coverson to the offense was the two confessions, the judgment of his conviction, and the finding of the murder weapon as above stated, petitioner now contends that the admission of Coverson's confession and the corroboration therein of the statements in petitioner's confession assisted the jury in determining the issue of voluntariness of petitioner's confession. Due to such taint, petitioner says, the introduction of Coverson's confession cannot be found to be harmless error.

We do not agree. The petitioner was the only witness who testified to alleged acts of force and coercion by the officers taking his confession. No less than six witnesses present at different times during the examination testified that there was no force or coercion toward petitioner during the examination and giving of his statement, and that he was not in any manner abused. At the time Coverson's confession was admitted in evidence, and also in the court's charge, the jury was instructed that it could consider that statement only on the limited issue of Coverson's guilt as a principal. The record does not reflect that there was any objection made by petitioner to these instructions.

The evidence of the voluntariness of petitioner's confession was overwhelming. Without such confession, as was also the case in Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340, the evidence of any connection between petitioner and his principal was virtually non-existent. True, as was also the case in *Schneble* under the court's instructions the jury might have found petitioner's confession involuntary, and, therefore, inadmissible. As stated by the Supreme Court in a situation similar in principle in *Schneble,* supra:

"But this argument proves too much; without Schneble's confession and the resulting discovery of the body, the State's case against Schneble was virtually non-existent . . . . Judicious application of the harmless-error rule does not require that we indulge assumptions of irrational jury behavior when a perfectly rational explanation for the jury's verdict, completely consistent with the judge's instructions, stares us in the face. See Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 504–505, 77 S.Ct. 443, 447, 1 L.Ed.2d 493 (1957)."

See also Hoover v. Beto, 467 F.2d 516, 541 (5th Cir. 1972), cert. denied, 409 U.S. 1086, 93 S.Ct. 703, 34 L.Ed.2d 673.

We also quote further from *Schneble,* as follows:

"Having concluded that petitioner's confession was considered by the jury, we must determine on the basis of 'our own reading of the record and on what seems to us to have been the probable impact . . . on the minds of an average jury,' Harrington v. California, supra. 395 U.S., at 254, 89 S.Ct., at 1728, 23 L.Ed.2d 284, whether Snell's admissions were sufficiently prejudicial to petitioner as to require reversal. In Bruton, the Court pointed out that '[a] defendant is entitled to a fair trial but not a perfect one.' 391 U.S. at 135, 88 S.Ct. at 1627, 20 L.Ed.2d 476 quoting Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953). Thus, unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction reversal is not required.

**846**

See Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). In this case, we conclude that the 'minds of an average jury' would not have found the State's case significantly less persuasive had the testimony as to Snell's admissions been excluded. The admission into evidence of these statements, therefore, was at most harmless error."

See also Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1.

■ We conclude beyond a reasonable doubt from what seems to us to have been the probable impact on the minds of an average jury that the admission in evidence of the improper testimony from Coverson's confession was not sufficiently prejudicial to petitioner as to constitute reversible error. The State's case would not have been less persuasive had such evidence been excluded. The admission of this evidence was, at most, harmless error. See Carey v. State, Tex.Cr.App., 455 S.W.2d 217.

The relief prayed for is denied.

Opinion approved by the Court.