**Wileen LEWIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 49530.

Court of Criminal Appeals of Texas.

April 16, 1975.

Douglas R. Bergen, Waco, for appellant.

Martin D. Eichelberger, Dist. Atty., Felipe Reyna and Ward Casey, Asst. Dist. Attys., Waco, Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

MORRISON, Judge.

The offense is robbery; the punishment, 50 years.

Appellant and two others, Francis Cunnane and Marvin Recore, were tried jointly. Only appellant appeals.

The record reflects that appellant and three others participated in the robbery of a Waco service station attendant and his wife. The robbers escaped with $174.

Following the robbery, appellant contacted the police and filed two statements in short succession, both of which were introduced into evidence. In the first one she recited that while she and her niece were purchasing gasoline at the service station in question, Cunnane and Recore came into the station and proceeded to rob it. She claimed that the robbers threatened them and forced them to aid in their getaway. In the second statement, she admitted participating in the entire scheme to rob the service station, but claimed she did so under duress because Cunnane and Recore threatened her and her family. She stated that she met the pair four days before the robbery and that they forced themselves upon the family, holding them captive during the entire period.

Testifying in her own behalf, she recited essentially the same facts described in her second statement.

The State introduced the confessions of Cunnane and Recore into evidence. Both confessions recited that appellant actively and willingly participated in the commission of the offense.

Neither Cunnane nor Recore testified before the jury at the trial on the merits.

The service station attendant identified appellant as one of the people who drove away from the station after the robbery. He stated that she appeared neither nervous nor apprehensive during the commission of the crime. He was unable to iden-

tify Cunnane or Recore, each of whom wore a disguise during the robbery, as participants in the offense.

Appellant's niece, Roberta May, testifying for defendant Recore, stated that she and her aunt helped plan the robbery and willingly participated in it.

Appellant's second ground of error challenges the admission, over her objection, of the confession of her two co-defendants, who did not testify. Appellant contends that the admission of these two confessions deprived her of her Sixth Amendment right of confrontation, in violation of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476.

In Bruton v. United States, supra, the United States Supreme Court held the admission of a confession of a co-defendant who did not take the stand deprived the defendant of his right under the Sixth Amendment confrontation clause of the United States Constitution. In Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L. Ed.2d 1100, the Supreme Court held *Bruton* applicable to state proceedings.

Supreme Court decisions since *Bruton,* however, have held that a violation of *Bruton* in the course of a trial does not automatically require reversal. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340. See also Ex parte Smith, Tex.Cr.App., 513 S.W.2d 839 and Carey v. State, Tex.Cr. App. 455 S.W.2d 217.

We are therefore faced with two questions. One, whether the admission of the two co-defendant's confessions violated *Bruton,* and two, whether, if a *Bruton* violation exists, it requires reversal.

■ It is well established that a confession of guilt can be used only against the person who confessed, and that it is inadmissible against others under the hearsay rule and as a violation of the right of confrontation guaranteed by the Sixth Amendment of the United States Constitution. Harrington v. California, supra; Schneble v. Florida, supra; Hearne v. State, Tex. Cr.App., 500 S.W.2d 851; Evans v. State, Tex.Cr.App., 500 S.W.2d 846; Carey v. State, supra; Chapman v. State, Tex.Cr. App., 470 S.W.2d 656.

■ In the case at bar, neither of appellant's co-defendants testified. Their confessions, implicating appellant as a principal, were introduced into evidence. Appellant objected to their introduction "due to the fact that they violate the Bruton doctrine."[1] No attempt was made to delete portions of the confessions which referred to appellant's complicity. See Griffin v. State, Tex.Cr.App., 486 S.W.2d 948. Appellant was therefore denied her Sixth Amendment right of confrontation and cross examination. Bruton v. United States, supra; Posey v. United States, 5 Cir., 416 F.2d 545; Ex parte Smith, supra; Hearne v. State, supra; Evans v. State, supra.

The next question then is whether the admission of these confessions, in view of other evidence presented, is harmless beyond a reasonable doubt.

\* \* \* \* \*

. . . That has to do with the law of admissibility of co-defendant's confession. And in that case they said where one confession indicates or implies that the co-defendant did anything, that if these defendants aren't going to take the stand . . . well, that violates the constitutional dictates of the Sixth Amendment, the right of confrontation."

1. Though the objection "due to the fact that they violate the Bruton Doctrine" may not have been sufficient to place the court on notice of the nature of the objection, we note that counsel for one of appellant's co-defendants in making the same objection stated it as follows:

"[Counsel for Cunnane] : . . . I am objecting to the admission of the confession of Wileen Lewis and Marvin Recore on the basis of Bruton versus United States.

Appellant's confession, omitting the warnings, redundant portions and irrelevant material, states:

" . . . Sunday night, July 29, at approximately 7:30, I, my niece Roberta May and Kathy Wallace, my daughter . . . stopped at the U.S.O. Club on Austin St. and [met] Frank Cunnane . . . and Mark Recore . . .

[Later they] . . . came to my house . . . Mark and Frank stayed at the house and said if I didn't let them stay they would harm one of the girls. So I let them because I didn't want the girls to get hurt. Either Mark or Frank have been at the house constantly since Sunday night.

. . . If they ever left the house they would always take one of my children. Up until last night, August 1st, this has been the situation at the house.

Mark and Frank told me they needed money . . . They said I was going to go with them and do whatever I had to do to help them get the money or they would shoot Roberta. We then left in my car with Roberta driving. Roberta, my niece, didn't know what was happening and she did what I told her to do. They said remember that we can get back to your house before you can (they had the key), and we'll do what we told you we would do which was harm the kids. Frank said to let them off at the Texaco Station and then they walked around the back of the Texaco Station to the Fina Station. They said before getting out of the car to drive down the Highway then come back to the Fina station and ask for some gas to get the attendent out of the station. When we arrived there, I told the attendent I wanted $2.00 worth of gas. They came from around the station and made the attendent open the cash register and they took the money out and then got back into the car. We drove from there to

the Northcrest Exit on I–35 back to the house. Roberta and I then left and went to Truck Stop and called the police . . . ."

Similarly, co-defendant Cunnane's confession recites:

" . . .

On Sunday, 29 July 73, . . . I met Marvin Recore . . . later, we met Mrs. Lewis, Bobbie, and Cathy, who is Mrs. Lewis's daughter. We stayed at [Mrs. Lewis'] at Mrs. Lewis's invitation. On 2 August about Midnight, I fell asleep watching TV and was awakened by either Bobbie or Marvin I can't remember which. I picked up my cigarettes and proceeded to the bedroom where Mrs. Lewis, Bobbie and Marvin, were waiting. I was told by Mrs. Lewis that money was needed for the kids and ourselves for the next 3–4 days. Earlier that day Marvin and I had stopped in for some change for cigarettes at the station we robbed. I had noticed there was a lot of money in the register. We told them about it and all agreed to a last chance. Earlier that day we had went to the Red Cross under assumed names to see if we could get some money to eat with. I used the name of Michael Roberts. We rode downtown looking for something we could find so we could sell it. Mrs. Lewis finally said 'OK, I'm tired of . . . around, let's go hit that gas station,' and that is exactly what we did. I was dressing in a green Army field jacket, a camouflage hat, and had a white scarf across my face. After we planned the robbery, Mrs. Lewis had planned on our getaway to make it look like they weren't even involved. Bobbie was driving and was told by Mrs. Lewis to take us back to the house . . . after we left that station. They drove north to a truck stop and called the police . . . We used two toy pistols in our pockets during the holdup."

Co-defendant Recore's confession reads:

" \* \* \*

On July 28 about 8:45 p. m. I met a soilder closed to the U.S.O. on Austin Street in Waco, Tx. I now know his name to be Francis Cunnane. A short time after I met Francis we met a big lady and two other girls with her, close to the U.S.O. Club on Austin Ave. Waco, Tex. The two girls with the big one were Kathy and Bobbie. We road around Waco with these girls for a while and went to the big girls house . . . We stayed at this place with these people till the early morning about 2:30 a. m. August 2, 1973 when the Big woman now known to me as Angel, wakes up Francis and say_ we have to have some money for food because their no food or money for food. We then discussed, me, Francis, Angel and Bobbie, how to get some money and we rode into town and around, came back to the house about 3:30 a. m. August 2, 1973 and discussed how to get some money again. We discussed robbing a service station that I guess Francis and Angel had been in early, and said there were only one guy there and a lot of money in the cash register. We then, Francis and I, pick_ up our disguise, I had a brown ski mask with white around the eyes and blue on the bottom, a_ army field jacket blue jean_, and a pair of boot_. Francis had a white handkerchief, that he put around his face, a__army camfalage hat, and we left. We got into the car with Angel and Bobbie, Bobbie driveing, and we then left the house. We got to some railroad tracks and got out and headed south toward the service station. Bonnie and Angel were to pull into the service station to get the man out of the station. We saw the car go by and saw the car come back and the man went to the car, and was putting gas into the car and Francis walked over to the attendent on duty and with his hand in his pocket told the attendent not to move and Francis threw the gas hose across the car,

Meanwhile I went into the station throught the front entrance. I saw a woman asleep inside at the desk. I tap__ her shoulder and ask her for the key to the registor and she said I don't have the keys. I ask__her again and she said —man outside has the keys. Then I saw Bonnie and Angel pull in front of the station. Then Francis got back out of the car and the attendent was in front of him, and they come into the station. Francis then told the attendent to open the registor. We both had our hand_ in our pocket. The attendant open_ the registor and Francis take the bills out of the registor with his left hand and put them into the bag I am holding. Francis then get a six pack of Budwiser Beer out of the cooler and we left with Bobbie and Angel. We threw our disguise on the road about ½ mile from the station we rob__."

In Ex parte Smith, supra, the erroneously admitted confession did not introduce any new inculpatory material not included in appellant's own statement, and substantial other independent evidence indicated appellant's guilt. Likewise in Carey v. State, supra, appellant's confession and those of his co-defendant were "substantially similar, mutually inculpatory and noncontradictory", thereby rendering their harmful effect minimal. Further, in that case appellant's co-defendant testified, but appellant did not cross-examine him.

The case at bar, however, presents a different situation. While the confessions of appellant and her co-defendants are similar concerning details of the offense, it is clear they differ on the *crucial element of appellant's defensive theory.* Appellant admitted taking part in the robbery, but claimed she did so under duress. The confessions of appellant's co-defendants refuted this claim. It is this fundamental conflict which renders the admission of the confessions of appellant's judicially silent co-defendants harmful to appellant, represents a violation of her fundamental rights under the Sixth Amendment and requires

reversal. The only other substantial evidence which refutes appellant's defensive theory of duress is the testimony of her niece that she and her aunt willingly participated in the offense. We are unable to conclude that without the co-defendant's confessions "[T]he State's case would not have been less persuasive". Ex parte Smith, supra; Carey v. State, supra. See also Bruton v. United States, supra; Schneble v. Florida, supra; Harrington v. California, supra; Posey v. United States, supra; Hearne v. State, supra; Evans v. State, supra.

The judgment is reversed and the cause remanded.