**Billy Joe EVANS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 51309.**

Court of Criminal Appeals of Texas.

March 31, 1976.

Kerry P. Fitzgerald, Dallas, for appellant.

Henry Wade, Dist. Atty., Maridell Templeton, Les Eubanks and Robert Prather, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for murder. After the jury returned a verdict of guilty, punishment was assessed by the court at twenty-five years.

The deceased, Iris Zepther Carter, was found lying in front of the washateria he operated near the "intersection of Scyene and Hatcher" in Dallas during the early morning of August 22, 1971. Officer Carmack of the Dallas Police Department testified that deceased "looked like he was struck numerous times from the lacerations on various parts of his head." The deceased was taken to Parkland Hospital where he died two days later without having ever regained consciousness. A stipulation of testimony of Dr. William Sturner, a pathologist, introduced into evidence reflects that an autopsy revealed that the deceased died as the result of injuries to the head. The injuries found were consistent with blows being administered to the head with a blunt instrument, such as a brick. A conviction resulting from the first trial was reversed by this Court.[1] This appeal stems from the conviction at the second trial in December, 1973.

Appellant and co-defendant Charles Edward Hearne, though indicted separately, were tried jointly in one trial.

Appellant contends, "The trial court committed reversible error in admitting into evidence the statement of Appellant's co-defendant, parts of which clearly implicated the Appellant in the commission of the Murder, as said statement constituted hearsay and denied Appellant his constitutional right to confrontation of witnesses."

The record reflects that confessions of appellant and the co-defendant were introduced into evidence.

1. See *Evans v. State,* 500 S.W.2d 846.

The portion [2] of appellant's confession introduced and read to the jury (omitting the printed warnings and waiver) reads:

"Voluntary Statement, August 25th, 1971, time, 5:00 p. m., Room 317, City Hall.

"I, Billy Joe Evans, am 19 years old and I live at 3811 York.

\*   \*   \*   \*   \*   \*

"Were coming from the apartments on Imperial and going to my house and walked across the parking lot, saw the man. Go into the brick yard and get a brick. Went to the brick yard and got a brick and then walked by the man one time. The old man was facing the street and then hit in the back of the head with the brick and knocked to his knees, then kicked and knocked down and the old man tried to get back up, hit in the temple with the brick. The keys were hanging in his belt and I grabbed the keys and threw them toward the street. I ran home.

"I have read this statement consisting of one page, each page of which bears my signature, and I do affirm that all facts and statements contained herein are true and correct."

The prosecutor then stated, "This [statement] bears the signature of Billy Joe Evans and the witness' signature, Nancy Ruth Bird."

Co-defendant Hearne's statement,[3] admitted into evidence over appellant's objection that it was hearsay to appellant and denied the appellant the right of confrontation, reads in pertinent part (omitting the printed warnings and waiver):

"On August 22, 1971 at about 5:00 a. m. Billy Joe and I had gone to Churches Chicken and they were closed, on the way back to Billy's house we saw an old white man raking the driveway in front of the washateria at Hatcher and Scyene. We decided to rob him and each of us got a brick from the brick yard across the street and we hit the old man on the head and I kicked him when he was down. I got his billfold and handed it to Billy Joe and Billy Joe got the change out of his pockets and gave me eighty cents. We then went to Billy's house."

Pursuant to appellant's request, the court instructed the jury not to consider any portion of the statement of Hearne as evidence of guilt of appellant. The court further instructed the jury in its charge that the statement of the co-defendant Hearne could only be used in establishing guilt of Hearne and was not evidence in any way against appellant.[4]

At the close of the State's evidence all parties rested. Neither appellant nor the co-defendant testified, and neither offered any evidence.

Appellant argues that reversible error resulted in admitting into evidence the extrajudicial confession of co-defendant Hearne, thereby depriving the appellant of the right of confrontation. In support of his argument, appellant relies on the United States

2. The pertinent portion of appellant's confession (with deleted portions identified) before deletion reads:

"(We) were coming from the apartments on Imperial and (were) going to my house and (when we) walked across the parking lot (we) saw the man. (Charles) said let's go into the brick yard and get a brick. (We) went to the brick yard and got a brick (apiece) and then (we) walked by the man one time. The old man was facing the street and (Charles said something to him and) then hit (him) in the back of the head with the brick and knocked (him) to his knees, then kicked (him) and knocked (him) down and the old man tried to get back up, (Charles) hit him in the temple with the brick. (Charles grabbed the man's billfold and told me to get the car keys.) The keys were hanging in his belt and I grabbed the keys and threw them toward the street. I (paniced [sic] and) ran home. (Charles was running behind me and I ask him if he got any money and Charles said no.)"

3. Co-defendant Hearne's statement was held inadmissible in *Hearne v. State*, 534 S.W.2d 703 (1976).

4. See *Evans v. State*, supra; *Hearne v. State*, 500 S.W.2d 851.

Supreme Court's decision in *Bruton v. United States*, 391 U.S. 123, 89 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

The State urges that the co-defendant's statement is nothing more than cumulative of appellant's own detailed statement admitting the commission of the offense, and error, if any, in admitting the co-defendant's confession was harmless.

Authorities cited by appellant and the State are discussed in our recent opinion in *Bass v. State*, 527 S.W.2d 556:

"It is well established as a general rule that a confession of guilt can only be used against the person giving the confession and is inadmissible against others under the hearsay rule. See *Schepps v. State*, 432 S.W.2d 926, 940 (Tex.Cr.App. 1968); *Carey v. State*, 455 S.W.2d 217 (Tex.Cr.App.1970); *Evans v. State*, 500 S.W.2d 846 (Tex.Cr.App.1973); *Hearne v. State*, 500 S.W.2d 851 (Tex.Cr.App.1973); *Ex parte Smith*, 513 S.W.2d 839 (Tex.Cr.App.1974); *Lewis v. State*, 521 S.W.2d 609 (Tex.Cr.App.1975); McCormick & Ray, Texas Law of Evidence, 2nd ed., Sec. 1219, p. 96; 24 Tex.Jur.2d, Evidence, Sec. 667, p. 272.

"In *Bruton v. United States*, supra, the United States Supreme Court, overruling *Delli Paoli v. United States*, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), held that despite instruction to the jury to disregard the implicating statements in determining the co-defendant's guilt or innocence, admission at a joint trial of a defendant's extrajudicial confession implicating a co-defendant violated the co-defendant's right of cross-examination secured by the confrontation clause of the Sixth Amendment. And in *Roberts v. Russell*, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968), the Supreme Court held that the *Bruton* decision was not only applicable to the State proceeding, but that the decision was fully retroactive.

"While a *Bruton* error is one of constitutional dimension, we do know that such error can, under some circumstances, be harmless constitutional error. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). See also *Ex parte Smith*, supra; *Carey v. State*, supra.

\* \* \* \* \* \*

". . . in *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), the court further said:

'The mere finding of a violation of the Bruton rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.'

"In *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), the court cited *Harrington* and *Schneble* with approval, and stated:

'Upon an independent examination of the record, we agree with the Court of Appeals that the Bruton errors were harmless. The testimony erroneously admitted was merely cumulative of other overwhelming and largely uncontroverted evidence properly before the jury.'

"In *Carey v. State*, 455 S.W.2d 217, 221 (Tex.Cr.App.1970), this court recognized the rule in *Bruton* was not absolute. See also *Ex parte Smith*, 513 S.W.2d 839 (Tex.Cr.App.1974).

"In *Carey v. State*, supra, at p. 221, this court noted:

'It would appear that a substantial difference exists between a joint trial in which a jury hears a co-defendant's statement inculpating a defendant who

has himself made similar incriminatory admissions, and the Bruton type of case in which the co-defendant's statement is used against a defendant who has made no admissions. In the former situation the prejudice or harmful effect to the defendant, if any, is minimal and entirely insufficient to call for a reversal, particularly where there is other adequate evidence to reflect the defendant's guilt. (authorities cited omitted)'

"In *Jones v. State*, 227 So.2d 326 (Fla. App.1969), it was held that where the defendant's confession, which was clearly admissible as against him, was in such detail that the statements of his co-defendant which implicated him added nothing new the admission was harmless error under *Harrington v. California*, supra. See also *People v. Rosochacki*, 41 Ill.2d 483, 244 N.E.2d 136 (1969)."

■ The foregoing authorities dictate that the admission of the co-defendant's confession was error despite the court's limiting instruction. We must next determine if such was harmless beyond a reasonable doubt.

In *Schneble v. Florida*, supra, it was stated:

"Thus, unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required."

■ The only evidence connecting appellant and the co-defendant with the commission of the crime consisted of their written confessions. The difficult task of attempting to delete portions of a statement inculpatory to a co-defendant is reflected by that portion of appellant's statement introduced into evidence. The result is a statement which left much to be desired from the standpoint of clarity. The statement neither contains the date nor place where the offenses occurred. While the statement recites the date on which it was taken, no inference could be drawn from this as to the date of the crime. Clearly, meaning was given to appellant's statement upon the admission of the co-defendant's statement into evidence. The co-defendant's statement supplied the link which tied "Billy Joe," whom the jury was bound to have understood to be appellant, to the crime in question. It recited the date, time and place of the murder alleged and proven by other evidence. We cannot conclude that the statement of the co-defendant was merely cumulative of other evidence or that it did not add anything new to the statement made by appellant. While there might be a basis upon which to logically argue that the jury could have concluded that appellant's statement, as introduced before them, constituted an admission to the crime charged, the co-defendant's statement clearly supplied the missing pieces. The State's case would have been significantly less persuasive without the admission of the co-defendant's confession. Unquestionably "there is a reasonable possibility that the improperly admitted evidence contributed to the conviction." Under the circumstances here presented, we cannot conclude that the error was harmless beyond a reasonable doubt.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.