Billy J. McMAHON and Bobby F.
McCormick, Appellants,

v.

The STATE of Texas, Appellee.

No. 58240.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 22, 1978.

Rehearing En Banc Denied Jan. 10, 1979.

Lawrence R. Scroggins, D. Jennings Bryant, Jr., and Barry Barton Kieval, Houston, for appellants.

William S. Warren, Dist. Atty., Center, for the State.

## OPINION

DOUGLAS, Judge.

Following a change of venue from Shelby County, appellants McMahon and McCormick were convicted in a joint trial for the offense of capital murder. Each appellant was assessed the death penalty.

The State alleged and proved that appellants murdered Earl Hammond for remuneration. See V.T.C.A., Penal Code, Section 19.03. The sufficiency of the evidence to support the convictions is not challenged.

The deceased's wife, Becky Hammond, and her lover, Tony Bohannon, hired appellants to execute the deceased. Bohannon first offered to employ appellant McMahon in this regard in May, 1976, when they met in a store in Center. McMahon rejected this offer and returned to his home in Houston. McMahon subsequently discussed the matter with appellant McCormick who agreed to assist him in the event an agreement with Bohannon could be reached.

Thereafter, McMahon went to Center on several occasions and discussed the murder contract with Bohannon. On one of those occasions McMahon told Bohannon that he would commit the murder for twenty-five thousand dollars. Bohannon responded that he would have to discuss the terms with another party (Becky Hammond) and then contact him again. No agreement was made at that time.

McMahon met Bohannon again in mid-June of 1976 whereupon the agreement was finally consummated. McMahon told Bohannon that he and another person would commit the murder in exchange for ten thousand dollars or more. Several days later Bohannon talked to McMahon and instructed him to kill the deceased on June 19, 1976. Appellants left Houston on that date and drove to Center. McMahon took a .32 caliber revolver with him.

When they arrived in Center, Bohannon gave the gunmen further instructions and money for the purchase of a .12 gauge shotgun. They bought such a gun in Center. McMahon gave the clerk his operator's license "for identification" and she made a photograph of it. McMahon asked for buckshot. When he was told that they had none, he stated that he wanted shot that would kill. That evening appellants hid in the woods behind the deceased's house. When the deceased returned home from work appellants executed him.

The death was caused by multiple pistol and shotgun wounds. An autopsy revealed no evidence of a struggle on the part of the deceased.

After the offense was committed, appellants met Bohannon at a predetermined location. He gave them between ten and fifteen thousand dollars in cash. This money belonged to the owners of a store where the deceased was manager and where Becky Hammond and Bohannon worked. Instead of making the deposit of the cash, it was delivered to the killers. Appellants returned to Houston the same night and fled to Mississippi the next day. They eventually went to Mobile, Alabama, where they surrendered to officers of the local police department.

Becky Hammond and Tony Bohannon testified about their roles in the offense. Both of them had been convicted for the murder and were serving their time.

A half-brother of Billy McMahon testified that Bobby McCormick and Billy McMahon came to his house in Mobile, Alabama and gave him some $1400 and a .12 gauge shotgun and told him that they had killed a "dude" with it.

Appellants waived extradition on August 9, 1976, and were returned to this State on August 11. McCormick gave a written confession to investigating officers on August 16 while he was in custody in Center. McMahon gave a written confession to officers the next day.

■ McCormick's first contention is that the trial court erred in ruling that his confession was voluntary and in admitting into evidence the fruits thereof. The question of the voluntariness and admissibility of the written statement, however, is not before us because it was not introduced into evidence. *Ex parte Parker,* 485 S.W.2d 585 (Tex.Cr.App.1972). See also *Perbetsky v. State,* 429 S.W.2d 471 (Tex.Cr.App.1968).

■ Further, McCormick does not specify what, if any, evidence was obtained as the result of the confession. The record discloses no objections by him on this basis to the evidence introduced. Moreover, McMahon's confession related the events surrounding the crime in a very detailed fashion. Assuming that McCormick's confession was obtained in violation of his constitutional rights, it is apparent that the relevant evidence would have been obtained by means sufficiently distinguishable from the underlying illegality to be purged of the primary taint. See *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Santiago v. State,* 444 S.W.2d 758 (Tex.Cr.App.1969).

McMahon contends that the trial court erred in ruling that his written confession was voluntary and admissible. He argues that the confession was the product of compulsion and inducement.

In compliance with the requirements of *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and Article 38.22, V.A.C.C.P., the court held a hearing outside the presence of the jury to determine whether the confession was voluntary. Evidence introduced at the hearing showed that appellants were transported from Alabama to Center immediately after they were taken into custody on August 11, 1976, by three Center police officers and a Texas Ranger. McMahon was questioned during the trip by Jimmy Matthews, a policeman of Center, but he made no incriminating statements at that time and there is no indication that this questioning affected his confession which was made six days later. Compare *Farr v. State,* 519 S.W.2d 876 (Tex.Cr.App.1975).

McMahon testified at the hearing that when appellants and the officers arrived in Center he was taken before a justice of the peace and warned in accordance with Article 15.17, V.A.C.C.P. McMahon stated that he was interviewed on August 17 by Officer Matthews and Ranger Maurice Cook. According to McMahon, the officers told him that McCormick had confessed and that their intention was to give McMahon an opportunity to avoid the electric chair. He also testified that, before this, his father told him that he understood that McCormick had confessed. McMahon told them that he would not make a statement unless

**790**

his attorney was present. McMahon testified that the officers produced McCormick's written statement and began reading from it. McMahon then gave a written statement to the officers.

On cross-examination, McMahon testified that he had stopped attending school in the tenth grade but that he had developed fair reading and writing skills. He further testified that he was not mistreated by any of the officers before he gave the confession.

Both Officer Matthews and Ranger Cook testified. Ranger Cook testified that he read McMahon his *Miranda* warning, had him execute a written waiver of his rights and finally obtained a signed statement. While Ranger Cook was examined extensively by both the prosecution and defense concerning McCormick's confession, he gave no further testimony concerning McMahon. Matthews testified that he made no promise to McMahon that the giving of the confession would keep him from getting the electric chair. Ranger Cook testified that he was with McMahon during the questioning except for a period of some five minutes and that Matthews made no promise to him.

The confession itself recites that Matthews and Ranger Cook were the officers that took the confession. Matthews also warned McMahon of his rights. The statement at the top of the first page recites that no promises were made to the appellant. Cook testified that he did read parts of McCormick's confession to McMahon before McMahon made his statement, but only because McMahon had already been told by his father that McCormick had confessed. Cook further testified that McMahon asked to see McCormick's confession and that when the officers refused McMahon asked them to read part of it to him. Cook denied that either he or Officer Matthews ever promised McMahon that he could avoid the death penalty by making the confession.

■ A confession based upon an inducement, such as a promise that the State would not seek the death penalty, would be inadmissible. *Sherman v. State,* 532 S.W.2d 634 (Tex.Cr.App.1976). Relying upon *Farr v. State,* 519 S.W.2d 876 (Tex.Cr.App.1975),

appellant urges that since Matthews and Cook did not controvert McMahon's testimony at the suppression hearing the confession is inadmissible as a matter of law. When the State fails to controvert evidence of coercion, and there is no showing that the individuals who could controvert such statements are unavailable, we have long held that the confession is inadmissible as a matter of law. *Farr v. State,* supra; *Prince v. State,* 155 Tex.Cr.R. 108, 231 S.W.2d 419 (1950).

■ However, in the instant case, we cannot agree that the evidence was uncontradicted. The confession did contain a statement that McMahon had not been promised anything in return for making the confession. McMahon himself had testified that this portion of the confession had been read aloud to him. The statement in the confession and the testimony of Cook constituted evidence of the lack of any such promise. Matthews controverted McMahon's testimony during the trial.

The trial court is the sole judge of the weight and credibility of the evidence. *Aranda v. State,* 506 S.W.2d 221 (Tex.Cr.App. 1974); *Myre v. State,* 545 S.W.2d 820 (Tex. Cr.App.1977). He was able to observe the demeanor of McMahon as he testified. He had before him all of the circumstances concerning the confession. He chose to disbelieve McMahon. We conclude that the judge did not abuse his discretion in ruling that the confession was admissible.

■ McMahon also argues that his confession was obtained by the use of McCormick's confession and is therefore the fruit of the poisonous tree. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Assuming, without deciding, that the McCormick confession was illegally obtained, McMahon has no standing to attack that confession. See *Hull v. State,* 510 S.W.2d 358 (Tex.Cr.App.1974); *People v. Varnum,* 66 Cal.2d 808, 59 Cal.Rptr. 108, 427 P.2d 772 (1967), cert. denied 390 U.S. 529, 88 S.Ct. 1208, 20 L.Ed.2d 86 (1968).

■ Appellants next complain of the admission into evidence of a copy of a deposit slip reflecting a deposit in the amount of $13,000.00. The slip was prepared by Becky Hammond on the day of the offense and introduced by the State as proof of the remuneration received by the appellants for the murder of Earl Hammond.

Judy Fitzgerald testified that she was the bookkeeper for Due's Minimax and the present custodian of the store's financial records, including those records and deposit slips which were received from the store's previous management. Appellants contend. that because the deposit slip in question was executed prior to Mrs. Fitzgerald's employment as bookkeeper, and because she therefore could not be certain when the copy had been made, a proper predicate was not laid for its introduction under Article 3737e, V.A.C.S.

Becky Hammond testified that on the night of her husband's murder she was the bookkeeper for Due's Minimax and that she regularly prepared deposit slips for the store. She further stated that she and Tony Bohannon determined that they would pay appellants for the murder of the deceased by using money from the store that should have been deposited and that on the night of the offense she prepared the deposit slip. Bohannon testified that he took the money after telling the deceased that it would be deposited and delivered the cash to the killers after the murder.

■ Assuming arguendo that the trial court erred in admitting the deposit slip into evidence, such error was waived or rendered harmless. The improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is unchallenged. *Hughes v. State,* 562 S.W.2d 857 (Tex.Cr. App.1978); *Watson v. State,* 532 S.W.2d 619 (Tex.Cr.App.1976).

Appellants next contend that the prosecution improperly commented upon their failure to testify. Specifically, they complain of the following remarks by John Walker, a prosecutor, at the punishment phase of the trial:

"Have you seen any remorse? Have you seen any remorse on the part of the defendants?

"MR. BRYANT: I object to that, Your Honor. That is a comment on the Defendants failure to testify in this case, and at this time I would ask immediately for a mistrial.

"THE COURT: Denied.

"MR. BRYANT: Note our exception.

"THE COURT: Exception noted.

"MR. WALKER: Have you heard any evidence of redeeming value, true evidence of redeeming value of these defendants? Have you any such evidence? Have you heard of it? It doesn't exist in this case. You haven't heard it."

■ No objection was made to the prosecutor's last remarks. Error, if any, relating to that part of the argument was waived by appellants' failure to timely object. *Collins v. State,* 548 S.W.2d 368 (Tex.Cr.App.1976).

■ In reviewing the prosecutor's argument as a whole, moreover, we do not agree that it constituted an improper comment on the appellants' failure to testify. In *Nowlin v. State,* 507 S.W.2d 534 (Tex.Cr. App.1974), this Court stated that before a prosecutor's argument may be so construed the language used must be viewed from the jury's standpoint and the implication that the language refers to the defendant's failure to testify must be a necessary one. It is not sufficient that the language might be construed as an implied or indirect allusion. *Turner v. State,* 504 S.W.2d 843 (Tex.Cr. App.1974); *Armstrong v. State,* 502 S.W.2d 731 (Tex.Cr.App.1973). If the prosecutor's remarks may be reasonably construed as referring to the defendant's failure to present evidence through a witness other than himself, reversal is not required. *Brown v. State,* 475 S.W.2d 761 (Tex.Cr. App.1971); *Alvear v. State,* 170 Tex.Cr.R. 378, 341 S.W.2d 426 (1960).

■ In this case, the district attorney's remarks were not addressed to the jury at the guilt phase, but rather at the punish-

ment phase. In this connection, appellants were not the only individuals in a position to testify to the presence or absence of remorseful feelings on their part. Twenty-one reputation or character witnesses were called by the defense. They testified that appellants probably would not commit acts of violence in the future.

In *Tarpley v. State,* 565 S.W.2d 525 (Tex. Cr.App.1978), the prosecutor stated (referring to the defendant):

"He's shown no reason to me, and I don't think he's shown you any reason why he shouldn't be put away—"

We held no reversible error in that argument. We conclude that the prosecutor's argument in the present case could reasonably have been construed not to be a reference to the appellants' failure to testify but to their failure to show through other witnesses any remorse for their role in the commission of the murder.

Appellants contend that the evidence is insufficient to support the jury's finding that they would probably constitute a continuing threat to society. See Article 37.-071(b)(2), V.A.C.C.P. Each reputation witness testified, in essence, that appellants' reputations for being peaceful, law-abiding citizens were good, and that probably neither appellant would commit future acts of violence. Because the State presented no evidence at the punishment phase, appellants argue that we should hold that the evidence supporting the second special issue is insufficient as a matter of law.

▆▆▆▆ It is now well established that evidence presented at the guilt phase of the trial may be considered by the jury in the process of resolving the three special issues submitted at the punishment phase. *Brock v. State,* 556 S.W.2d 309 (Tex.Cr.App.1977); *Burns v. State,* 556 S.W.2d 270 (Tex.Cr.App. 1977); *Moore v. State,* 542 S.W.2d 664 (Tex. Cr.App.1976); and *Smith v. State,* 540 S.W.2d 693 (Tex.Cr.App.1976). Evidence presented at the guilt phase in the present case shows that appellants' greed motivated them to kill and that they executed the deceased with cruel calculation. McMahon's confession reveals that appellants contemplated at least one more murder for hire:

". . . Tony [Bohannon] told me, after I asked him if this was going to be the only one (killing) provided things worked out and Tony said it would be about three months and he might have another one that that [sic] would pay about fifty thousand dollars. I told Tony to call me and Bobby and I would do it. . . ."

Evelyn Barton identified appellants as the parties who had purchased a Remington Model 870 .12 gauge shotgun at her place of employment on the date of the offense. Appellants asked for buckshot ammunition. Barbara Livingston and David Adams recalled that when Barton told McMahon that she had no such ammunition in stock McMahon's response was, "Well, give me something that will kill."

Joe Hooker, a physician, testified that he went to the scene of the crime and examined the deceased's body and then assisted with the autopsy. Hooker stated that during his entire medical career he had never observed a human body so thoroughly destroyed by reason of gunshot wounds. Ed Roberts was one of the investigating officers. He testified that, although he had been acquainted with the deceased, the body he observed was only identifiable by the name tag on the shirt.

Furthermore, there was no evidence of mitigating circumstances presented to the jury. See *Hovila v. State,* 562 S.W.2d 243 (Tex.Cr.App.1978); *Robinson v. State,* 548 S.W.2d 63 (Tex.Cr.App.1977). Cf. *Warren v. State,* 562 S.W.2d 474 (Tex.Cr.App.1978). Accordingly, we hold that the evidence is sufficient to support the jury's determination that appellants would probably constitute a continuing threat to society. See *Brock v. State,* supra; *Burns v. State,* supra.

Appellants insist that the court erred in failing to declare a mistrial on its own motion after being notified of the attempted bribery of a juror.

The record reflects that on the evening of December 30, 1976, Charles Brazzil was at the home of his son-in-law, Juror Jim Ishmael. While at the Ishmael home, Brazzil received a telephone call from an anonymous individual who offered to pay Ishmael five hundred dollars to "hang the jury." Brazzil communicated this to his son-in-law and to the trial judge.

 Appellants correctly argue that the rule against jurors conversing with unauthorized persons about a case is so strong that injury to the accused is presumed. *Williams v. State,* 463 S.W.2d 436 (Tex.Cr. App.1971); *Cole v. State,* 157 Tex.Cr.R. 469, 250 S.W.2d 201 (1952). As the State points out, however, this presumption is rebuttable. Before a new trial will be warranted, there must be injury to the accused. Thus, if it is shown that the case was not discussed, or that nothing prejudicial to the accused was said, then the verdict will be upheld. *Williams v. State,* supra; *Cole v. State,* supra.

 In the present case, the bribe attempt was immediately reported to the court and an evidentiary hearing was held on the matter. Testimony adduced at the hearing revealed that no bribe was accepted, that nothing occurred between juror Ishmael and the anonymous caller, and that Ishmael discussed the case with no one. Since all the facts were fully before the court and no prejudice to appellants was demonstrated, the State discharged its burden of showing that the declaration of a mistrial was unnecessary. No objection was made. Trial judges should seldom declare mistrials on their own motions because in many cases jeopardy will attach. The judge did not err in failing to grant a mistrial on his own motion.

 Appellants' next contention is that the admission into evidence of a money bag was error. This contention is premised on the argument that the bag was a fruit of the confessions.

No objection to the money bag was raised at trial. Thus, any error was waived. *Lejeune v. State,* 538 S.W.2d 775 (Tex.Cr.App.

1976); *Phillips v. State,* 511 S.W.2d 22 (Tex. Cr.App.1974).

McCormick contends the court erred in admitting McMahon's confession. He argues that since this confession implicates him along with McMahon and since he was unable to cross-examine McMahon, his right to confront the witnesses against him was abridged.

 Introduction, at a joint trial, of a non-testifying codefendant's confession which implicates the other defendant, violates the defendant's confrontation clause rights. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Evans v. State,* 534 S.W.2d 707 (Tex.Cr. App.1976). This error can be avoided by either granting each defendant a separate trial or, if possible, editing the confession so that it does not implicate the other defendant. *Ex parte Smith,* 513 S.W.2d 839 (Tex. Cr.App.1974); *Carey v. State,* 455 S.W.2d 217 (Tex.Cr.App.1970). Also, the harmless error doctrine is applicable to confrontation clause rights. *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Carey v. State,* supra.

 In the instant case, references to McCormick could not be excised from the confession without the jury realizing that the excised portions referred to McCormick. Therefore, the only way to protect McCormick's rights, while allowing the State to use the confession against McMahon, would be to have separate trials. The State sought such a severance. Appellants, represented by the same counsel, opposed the severance. The trial court refused to sever the cases.

In *Carey v. State,* supra, we cited appellant's failure to request a severance as one ground for holding the *Bruton* error harmless. Similarly, in *Moore v. State,* 504 S.W.2d 904, 905, n. 1 (Tex.Cr.App.1974), we considered the *Bruton* question as unassigned error and again concluded that the failure to request a severance was one factor in determining that the error was harmless.

The case at bar squarely presents the question of whether opposition to the State's request for a severance waives a denial of confrontation clause rights. The cases previously discussed indicate that the confrontation clause rights are such that a violation may be harmless error and failure to seek a severance is a factor to consider in determining harmless error. We see no reason why such rights cannot also be waived by trial strategy. The only feasible method to protect McCormick's confrontation clause rights was to try appellants separately. The State sought such a severance; the defense successfully opposed it. We hold that under these facts McCormick waived his right to confront McMahon with respect to the confession.

There being no reversible error, the judgments are affirmed.

ODOM and PHILLIPS, JJ., concur in the result.

ROBERTS, J., dissents.