Joseph Paul TURNER, Appellant,

v.

The STATE of Texas, Appellee.

No. 69221.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 30, 1985.

Dave P. Dolezal, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and Mathew Dekoatz, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

WHITE, Judge.

On original submission, this Court held that the admission into evidence, during the punishment stage of appellant's trial for capital murder, of an extraneous offense committed by others, and not involving the appellant, was harmless error. This Court conceded that this evidence was irrelevant, and therefore inadmissible, but that it did not harm appellant because the evidence showed he was not involved. Appellant's conviction and sentence of death were affirmed. *Turner v. State*, 685 S.W.2d 38 (Tex.Cr.App.1985).

The appellant has filed a motion for rehearing in which he urges that the erroneously admitted evidence might have contributed to the sentence of death given to him. Appellant presents nothing new in his motion for rehearing. Appellant's counsel, quoting from the dissenting opinion to this Court's original holding, cites the lack of evidence against his client.[1] He argues that this insufficient level of proof could not have resulted in an affirmative answer to Special Issue Number Two without the admission into evidence of the extraneous offense. Based upon this, appellant requests that we reverse his sentence, and reform it to a sentence of confinement for life.

We disagree with the urgings of the appellant and overrule the appellant's motion for rehearing.

1. "no prior convictions, no acts of violence, no character evidence and no psychiatric evi-

dence." *Turner,* supra.

Under Article 37.071 (a), V.A.C. C.P., extraneous offenses are admissible at the punishment stage of a capital murder trial. The extraneous offenses offered into evidence do not have to involve crimes of violence to be relevant to whether the defendant is a "continuing threat to society." *Felder v. State*, 564 S.W.2d 776 (Tex.Cr. App.1978); *Starvaggi v. State*, 593 S.W.2d 323 (Tex.Cr.App.1979). The extraneous offenses do not have to be finally adjudicated to be admissible. *Brooks v. State*, 599 S.W.2d 312 (Tex.Cr.App.1979); *Quinones v. State*, 592 S.W.2d 933 (Tex.Cr.App.1980); *Williams v. State*, 668 S.W.2d 692 (Tex.Cr. App.1983); *Smith v. State*, 683 S.W.2d 393 (Tex.Cr.App.1984). It is not necessary that the extraneous offenses occur prior to the time of the commission of the alleged capital murder. *Davis v. State*, 597 S.W.2d 358 (Tex.Cr.App.1980).

From this history, it is apparent that a trial court has wide discretion, under Art. 37.071, supra, in determining what is relevant and admissible at the punishment stage of a capital murder trial. This wide discretion amounts to deciding what extraneous offenses are relevant. *Crawford v. State*, 617 S.W.2d 925 (Tex.Cr.App.1980, rehearing denied 1981). This discretion extends to "the question of relevance of the facts sought to be proved" and offered into evidence. *Smith v. State*, 683 S.W.2d 393 (Tex.Cr.App.1984, rehearing denied 1985). In the instant case, it was within the trial court's authority to admit the extraneous offense into evidence. If the relevance of that offense is in question, it is the appellant's duty to bring this to the attention of the trial court by making the proper objection. A failure to properly object concedes the relevancy of the offered evidence.

In the instant case, appellant improperly objected to the testimony of Quiroz, the jailer. On three separate occasions (all that appeared in the record), defense counsel objected to Quiroz's testimony about being stabbed during the escape attempt. On these occasions, the objections were that Quiroz's testimony was "purely hearsay" (Vol. VII, R. 2), not within Quiroz's personal knowledge (Vol. VII, R. 9), and "hearsay on the part of Mr. Quiroz" (Vol. VII, R. 10). After this, the trial court ruled that, on voir dire, "Mr. Quiroz has not testified to any hearsay. He has answered the questions ... very clearly that he did not see Mr. Turner and that he did not see who stabbed him [2] ... the testimony, however, of this officer sets the scene for the escape, and as such, the Court will rule it's admissible." (Vol. VII, R. 10–11).

A proper objection should have been based on whether or not Quiroz's testimony was relevant to the second special issue submitted to the jury. Appellant's objections that Quiroz's testimony was hearsay, and not of his personal knowledge, were improper. The trial court correctly overruled appellant's objection. If there was an error due to the admission of the extraneous offense (the stabbing of Quiroz), appellant waived that error and preserved nothing for review.

Lastly, appellant has urged that we review the sufficiency of the evidence used to prove that he would "commit criminal acts of violence that would constitute a continuing threat to society" (Vol. I, R. 187). Without considering the evidence of the stabbing of Quiroz, we find that the evidence in the instant case sufficiently proved Special Issue No. Two, and it was properly answered in the affirmative.

A jury may consider all of the evidence adduced at the hearing on guilt or innocence when answering the special issues at the punishment hearing. *McMahon v. State*, 582 S.W.2d 786 (Tex.Cr.App. 1978, rehearing denied 1979); *O'Bryan v. State*, 591 S.W.2d 464 (Tex.Cr.App.1979); *Green v. State*, 682 S.W.2d 271 (Tex.Cr. App.1984). If the circumstances of the offense are severe enough, they can, alone, sufficiently establish that the defendant

---

2. "Q. And there was another person at the door (to the sun roof), but you cannot identify that person?

"A. (Mr. Quiroz): I couldn't because they had a shank on my eye and I couldn't see who it was" (Vol. VII, R. 16).

will constitute a continuing threat to society. *McMahon,* supra (the State presented no evidence at the punishment stage); *O'Bryan,* supra; *O'Bryan v. Estelle,* 714 F.2d 365 (5th Cir., 1983); *Russell v. State,* 665 S.W.2d 771 (Tex.Cr.App.1983); *Green,* supra.

Several circumstances of the offense in the instant case indicate that the appellant represents a continuing threat to society. The calculated nature of a defendant's criminal acts and the forethought with which he planned and executed the crime is probative of his propensity to commit future violent acts. In the instant case, appellant called the Winchell's store, where he used to work, on the night of the murder. He was able to determine who was there, and gave a story (that he was "Jim" from the Las Cruces store) to the deceased so that she would be expecting him. From his earlier employment at the Winchell's store, he knew where the money was kept and that the night attendant was usually alone. After the robbery of the deceased at the Winchell's store and the murder of the deceased, appellant threw away the clothes he wore and shaved off his mustache in order to disguise his appearance. The calculated nature of appellant's acts demonstrates his propensity to commit future acts of violence. *Russell v. State,* 598 S.W.2d 238 (Tex.Cr.App.1980); *Williams v. State,* 668 S.W.2d 692 (Tex.Cr.App.1983); *O'Bryan v. Estelle,* supra.

The appellant coolly carried out his crime. He sat down, drank coffee and chatted with the deceased prior to robbing her and killing her. He did his best to put the deceased at ease by telling her he was a former employee and that he was only joking with her when he called and told her he was Jim from Las Cruces. To kill the deceased, appellant bound her left hand with an apron and then choked her to death with a hemp rope. The coroner testified that this rope was wrapped four times around the deceased's neck and had been "tightened with considerable force" (Vol. V, R. 150). The cold manner in which appellant executed his crime is probative of his propensity to commit future acts of

violence. *Hawkins v. State,* 660 S.W.2d 65 (Tex.Cr.App.1983); *McMahon,* supra.

Appellant showed no remorse for robbing and killing the baker at the Winchell's store. After murdering his victim, appellant, in his own words, went home and went to sleep. The appellant did not act like the "agitated and somewhat distressed" defendant in *Roney v. State,* 632 S.W.2d 598 (Tex.Cr.App.1982). Appellant acted more like the defendant in *Williams v. State,* 668 S.W.2d 692 (Tex.Cr.App.1983), who also went home and went to bed after murdering the attendant of a store where he used to work. As in *Williams,* supra, appellant showed no remorse for his cold-blooded acts. This is also probative of the appellant's tendency to violence.

Appellant testified at his trial. At no time did appellant present evidence that he was under the influence or domination of anyone else. Appellant acted alone to execute his plan. At no time did appellant present evidence that he was under mental or emotional pressure. Appellant did not attempt to present evidence of mitigating circumstances which prompted his criminal conduct. All of these three factors are probative of a defendant's propensity to commit future acts of violence. *Duffy v. State,* 567 S.W.2d 197 (Tex.Cr.App.1978); *Demouchette v. State,* 591 S.W.2d 488 (Tex.Cr.App.1979); *Green,* supra; *Russell v. State,* 598 S.W.2d 238 (Tex.Cr.App.1980); *McMahon,* supra.

 Besides the circumstances of the crime itself, there was also evidence that the appellant had committed other, extraneous offenses. During the trial, the appellant testified that after receiving a bonus from the Army for re-enlisting, he went AWOL. Appellant testified he was still AWOL at the time of the instant offense (Vol. V, R. 197). Offenses, in violation of military law, are admissible as extraneous offenses in a capital murder trial. *Starvaggi v. State,* 593 S.W.2d 323 (Tex.Cr. App.1979). As discussed earlier in this opinion, the evidence concerning appellant's escape was admissible as an unadjudicated

extraneous offense. The evidence concerning the recovery of the screwdriver/shank from appellant after the escape was also admissible.[3]

Together, the circumstances of the crime and the appellant's extraneous offenses indicate the appellant's clear propensity to commit future acts of violence. As such, the evidence in the instant case sufficiently proved that appellant would constitute a continuing threat to society.[4]

Accordingly, we affirm the judgment of the trial court.

CLINTON and TEAGUE, JJ., dissent.

McCORMICK, J., not participating.

---

Douglas Tinker, Eric G. Brown, Corpus Christi, for appellant.

Thomas L. Bridges, Dist. Atty., and John Gilmore, Asst. Dist. Atty., Sinton, Robert Huttash, State's Atty., Austin, for the State.

---

3. This last piece of evidence was very probative of the appellant's propensity to commit future acts of violence. It indicated a willingness to do violence against people who might try to interfere with his escape.

4. The appellant's youth and clean prior criminal history do not act as a talisman against capital punishment. This was evident in this Court's

holdings in *Earvin v. State,* 582 S.W.2d 794 (Tex.Cr.App.1979); and *Williams,* supra. Even though there was no psychiatric testimony against appellant, this is not necessary to support an affirmative finding to Special Issue No. Two. *Brooks v. State,* 599 S.W.2d 312 (Tex.Cr. App.1979); *Mitchell v. State,* 650 S.W.2d 801 (Tex.Cr.App.1983).