TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00473-CR






David Andrew Mendez, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331STJUDICIAL DISTRICT


NO.975373, HONORABLE BOB PERKINS, JUDGE PRESIDING







 Appellant David Andrew Mendez was convicted of capital murder. See Tex. Pen.
Code Ann. § 19.03(a)(7)(A) (West 1994). Because the State did not seek the death penalty, appellant
was sentenced to life imprisonment. Appellant asserts that he was denied his constitutional right to
be confronted with the witnesses against him and that the evidence is insufficient to support his
conviction. We will reverse and remand.


BACKGROUND


 On October 1, 1997, Francisco Vasquez and George Rodriguez were shot and killed
in the Vasquez family home's garage, which had been converted into a bedroom. The next-door
neighbor heard several shots and then saw two men run from the house and escape in a gray Blazer-type vehicle. Another neighbor heard gunshots and looked toward the house; she heard a car start
and saw a light-colored, sport-utility vehicle drive past her at a rapid speed. She later identified
appellant as the driver of the vehicle. Based on this and other information, the police went to
appellant's apartment and asked appellant and three of his friends--Saul Isaac Flores, John Frizzell,
and Joel Gonzales--to come to the station for questioning. Appellant was questioned and released,
as were Frizzell and Gonzales. However, during questioning, Flores gave police a statement
confessing to participation in the murders and implicating appellant as the primary actor in the
murders. Appellant was subsequently arrested and indicted for capital murder.

 At appellant's trial, the State introduced several witnesses. Both neighbors testified
to what they saw and heard on the day of the murders. A police officer testified that appellant's gray
Blazer was found hidden in another part of the city. Gonzales, who lived with appellant, testified
that appellant had been angry with the victims because they had stolen money and drugs from him. 
Gonzales also testified that on the day of the crime, appellant and Flores were nervous when they
returned home and seemed particularly interested in a television news account of the murders.

 The State called Flores as a witness. Despite an offer of use immunity, he refused
to testify and was held in contempt of court. The State then offered Flores's written confession into
evidence. Appellant objected to the confession as inadmissible hearsay. The court overruled the
objection and expressed an intent to admit the confession as an exception to the hearsay rule. Again
appellant objected, arguing that introduction of the confession would violate his right to confront the
witnesses against him under the Sixth Amendment of the United States Constitution, article I, section
10 of the Texas Constitution, and article 1.05 of the Texas Code of Criminal Procedure. The court
overruled appellant's objection finding that Flores's statement was self-inculpatory and thus
admissible as a "statement against penal interest" under Rule 803 of the Texas Rules of Evidence. 
See Tex. R. Evid. 803(24). Flores's confession reads, in part:

DAVID SELLS COCAINE FOR A LIVING. I DON'T SELL FOR DAVID BUT I
GO AND PARTY WITH HIM. I DO COCAINE AND SMOKE WEED.

ON OCTOBER 1ST I SPENT THE NIGHT DAVIDS. WE WENT TO BED
ABOUT 4 OR 5AM. I GOT UP WHEN DAVID WOKE ME UP, I DON'T KNOW
WHAT TIME IT WAS, THE SUN WAS COMING UP, IT WAS MORNING TIME.


DAVID ASKED ME IF I WOULD GIVE HIM A RIDE SOMEWHERE. DAVID
HAD TWO BOXES, CARDBOARD WITH THE STYROFOAM CUTS OUT, GUN
BOXES. THE GUNS WERE STILL IN THE BOXES. WHEN YOU OPENED
THE BOX THERE WAS A CLIP IN THE GUN AND A LOADED CLIP. WE
WENT IN HIS BLAZER, A GREY PRIMER BLAZER, I THINK IT'S A GMC. I
DROVE DAVID SAID LET'S GO TO FRANKS. WHEN WE GOT TO FRANKS
THERE WAS A BROWN TRUCK. HE TOLD ME TO TAKE THE BLOCK. 
WHEN WE CAME BACK THE TRUCK WAS THERE BUT WE STOPPED
ANYWAY. WHEN WE GOT TO FRANKS HOUSE HE GAVE ME A BOX AND
TOLD ME TO HOLD THIS. I KNEW IT WAS A GUN. I KNEW THE GUN WAS
AN AUTOMATIC NOT A REVOLVER. HE SAID, COME ON STAND BY THE
DOOR, COME UP HERE.


WE WALKED UP TO THE FRONT DOOR. I WALKED IN THE HOUSE IN THE
FRONT ROOM. DAVID PEEPED OUT THE HOUSE, CHECKED IT OUT. HE
WALKED TO THE GARAGE DOOR AND I HEARD "WHAT THE FUCK". I
THEN HEARD SHOOTING, TAT TAT AND I RAN IN THE GARAGE AND
POINTED MY WEAPON. FRANK WAS ON THE BED BUT ROLLING OFF ON
TO THE FLOOR. HE WAS TURNING AWAY FROM US. FRANK WAS THE
FIRST ONE THAT SET UP, HE HAD BEEN ASLEEP AND HE SAT UP AND
THEN STARTED TO TURN. WHEN I RAN IN I FIRED MY GUN ABOUT
THREE TIME. I AM RIGHT HANDED BUT I WAS SHOOTING WITH MY
LEFT HAND. WHEN I WENT IN I WAS HOLDING THE GUN WITH BOTH
HANDS AND I COVERED THE ROOM. I FIRED POSSIBLY THREE TIMES.


GEORGE WAS LAYING ON THE FLOOR. HE WAS LIKE AT AN ANGLE
SLEEPING ON THE FLOOR.


AS I RAN OUT THE SIDE DOOR OF THE GARAGE I HEARD A NEIGHBOR
SAY, "DID YOU HEAR GUN SHOTS." I RAN TO THE BLAZER AND JUMPED
IN THE PASSENGER SIDE. I WAS IN FRONT OF DAVID. HE RAN TO THE
DRIVERS SEAT AND DROVE OFF.


DAVID SAID WHAT DO WE DO, WHERE DO WE GO. I SAID GO HOME. I
LEFT MY GUN IN THE BOX IN THE BACK SEAT. AS WE WERE DRIVING
BACK TO THE APARTMENT I WAS LIKE IN A DAZE. I WAS STONED
WHEN I WENT BUT THAT SOBERED ME UP.

DAVID TOLD ME THAT HE WAS GOING TO GET THE TRUCK PAINTED
BLUE. I DON'T KNOW WHERE THE TRUCK IS, AND I DON'T KNOW
WHERE THE GUNS ARE. THE LAST PLACE I SAW THE GUNS WAS IN THE
BLAZER. WHEN WE GOT HOME I WALKED IN THE HOUSE AND WENT TO
SLEEP. I TOLD JOHN WHAT HAPPENED. HE ASKED WHAT THE FUCK
HAPPENED, WHY YOU LIKE THAT. I TOLD JOHN WE FUCKED UP DUDE. 
WHEN THE NEWS CAME ON HE LOOKED AT ME LIKE "GOD DAMN".


. . .


DAVID WANT TO KILL FRANK AND GEORGE BECAUSE THEY JACKED
HIM, I THINK HE WANTED FRANK MORE. THEY WENT UP IN HIS HOUSE
AND TOOK HIS SHIT. IT WAS ESTIMATED THAT THEY TOOK ABOUT
3,000.00 IN CASH AND DOPE. FRANK AND GEORGE HAD BEEN OVER
THERE BEFORE. DAVID WAS NOT THERE WHEN IT HAPPENED AND
JOEL TOLD DAVID THAT IT WAS FRANK AND GEORGE. . . . 


DAVID KEEPS HIS CLOSET DOOR LOCKED 24-7. HE KEEPS THE DOOR
LOCKED BECAUSE THAT IS PROBABLY WHERE HE KEEPS HIS SHIT. HE
DOES NOT LET ANYONE IN THE ROOM WHEN HE CUTS HIS SHIT UP. I
HAVE SEEN THE CLOSET DOOR OPEN BUT HE WOULD NOT LET ME IN.



 Unquestionably, Flores's confession is hearsay, which is defined as "a statement,
other than one made by the declarant while testifying at the trial or hearing, offered in evidence to
prove the truth of the matter asserted." Tex. R. Evid. 801(d). Hearsay is inadmissible unless it
qualifies for an exception authorized by statute or the Rules of Evidence. (1) The State notes that Rule
803 permits the admission of hearsay evidence that subjects the declarant to criminal liability. Tex.
R. Evid. 803(24). (2) Flores's confession exposed him to criminal liability for the deaths of Vasquez
and Rodriguez. The State argues that it was therefore admissible at trial against appellant. 
Appellant contends that the admission of Flores's confession violated his right to confront the
witnesses against him under the Sixth Amendment of the United States Constitution. (3) The State
rejoins, accurately, that the Confrontation Clause is not an absolute bar to the admission of hearsay. 
The Confrontation Clause is also subject to exceptions. See Lilly v. Virginia, 527 U.S. 116, 125-26
(1999) (stating that framers of U.S. Constitution intended to respect rules of evidence and did not
intend to exclude highly reliable hearsay, for example, dying declarations). The State asserts that
because Flores's confession qualifies as a declaration against penal interest under Rule 803(24),
admitting it into evidence does not violate of appellant's Sixth Amendment rights.


DISCUSSION The Confrontation Clause of the Sixth Amendment to the United States Constitution
states, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the
witnesses against him." U.S. Const. amend. VI. The original objective of the provision was to
prevent the use of ex parte affidavits against criminal defendants without producing the affiants--a
practice common in 16th- and 17th-century England. (4) Lilly, 527 U.S. at 124. Thus, we compel the
live testimony of witnesses in order to ensure the reliability of the evidence by testing it in an
adversarial proceeding before the jury. Id. at 123-24. Courtroom procedures provide several
safeguards: (1) the witness is required to testify under oath and risk penalties for perjury if he lies;
(2) the defendant can challenge the witness's veracity, memory, motivation, and accuracy through
cross-examination; and (3) the jury is able to observe the demeanor and assess the credibility of the
witness. See California v. Green, 399 U.S. 149, 158 (1970). However, absolute enforcement of the
Confrontation Clause would eliminate every hearsay exception and thus prohibit any admission of
hearsay--a result rejected by the United States Supreme Court as unintended and extreme. Ohio v.
Roberts, 448 U.S. 56, 63 (1980). Although the Confrontation Clause expresses a preference for face-to-face confrontation at trial, out-of-court statements are sometimes admitted in the interests of
fairness and accuracy. See id. at 63-64.

 The out-of-court statement "against penal interest" is one of the many exceptions to
the hearsay rule. The United States Supreme Court has identified three uses of statements against
penal interest. Lilly, 527 U.S. at 127. The most recent use of the exception, and the one at issue in
this case, is the out-of-court statement offered in evidence by the prosecution to show the guilt of
a criminal defendant who is not the declarant. Id. at 130-31. (5)


The Declaration Against Penal Interest

 The hearsay exception for declarations against penal interest is governed by Rule
803(24) of the Texas Rules of Evidence. Tex. R. Evid. 803(24). There are two requirements that
must be met in order for hearsay to be admissible under this exception: (1) the statement must tend
to expose the declarant to criminal liability, and (2) corroborating circumstances must "clearly
indicate the trustworthiness of the statement." Davis v. State, 872 S.W.2d 743, 747-48 (Tex. Crim.
App. 1994). The Texas Court of Criminal Appeals has had several occasions to explicate the
803(24) exception; however, none of the cases involve the admissibility of a confession given during
custodial interrogation. See Guidry v. State, 9 S.W.3d 133 (Tex. Crim. App. 1999); Dewberry v.
State, 4 S.W.3d 735 (Tex. Crim. App. 1999); Cofield v. State, 891 S.W.2d 952 (Tex Crim. App.
1994). Instead, these cases all involve spontaneous utterances, not confessions. See Guidry, 9
S.W.3d at 147-48; Dewberry, 4 S.W.3d at 748-50; Cofield, 891 S.W.2d at 953-54. All but one
involve statements made to independent third parties not engaged in law enforcement. See Guidry,
9 S.W.3d at 147-48; Dewberry, 4 S.W.3d at 748-50; but see Cofield, 891 S.W.2d at 953-54. Thus,
while the court has established guidelines for admissibility under the Rule, no case is squarely in
point with the one before us. 

 In Cofield, the court of criminal appeals examined the admission of testimony by a
Texas Department of Public Safety trooper. 891 S.W.2d at 953-54. The defendant was in the
driver's seat and the declarant was in the passenger's seat of a car parked at a dead-end road. The
DPS officer testified that they appeared to be stuffing something under their seats. A copper pipe
and pistol were found on the defendant's side of the car. Drug paraphernalia was found on the
console between the seats and under the declarant's seat. A rock of cocaine was found in the
declarant's pocket. Over defendant's objection, the trial court admitted testimony in which the DPS
trooper recounted a spontaneous statement made by the declarant at the time of arrest indicating that
she and the defendant had been smoking cocaine shortly before the troopers arrived. The defendant
was convicted of possession of cocaine and sentenced to twenty-five years' imprisonment; the court
of appeals reversed.

 On petition for review, the court of criminal appeals noted that its focus was on
"verifying to the greatest possible extent the trustworthiness of the statement so as to avoid the
admissibility of a fabrication." Id. at 955 (citation omitted). The court concluded that statements 
that were not sufficiently self-inculpatory were inadmissible, even if contained within a larger
document that was, in the main, self-incriminating. Id. at 956 (citing Williamson v. U.S., 512 U.S.
594, 599-601 (1994), in which the Supreme Court had arrived at the same conclusion). The majority
of the court found persuasive this analysis of the same exception under the Federal Rules of
Evidence: (6)


"The fact that a person is making a broadly self-inculpatory confession does not make
more credible the confession's non-self-inculpatory parts[,]" and that "[o]ne of the
most effective ways to lie is to mix falsehood with truth, especially truth that seems
particularly persuasive because of its self-inculpatory nature." However, it did add
that "[e]ven the confessions of arrested accomplices may be admissible if they are
truly self-inculpatory, rather than merely attempt[ing] to shift blame or curry favor."



Id. (quoting Williamson, 512 U.S. at 599-603) (citation omitted). As the court of criminal appeals
observed, a broadly self-inculpatory hearsay confession may be calculated to demonize another
individual to secure a strategic advantage for the declarant. See id.


"[A] codefendant's confession is presumptively unreliable as to the passages
detailing the defendant's conduct or culpability because those passages may well be
the product of the codefendant's desire to shift or spread blame, curry favor, avenge
himself, or divert attention to another." Lee v. Illinois, 476 U.S. 530, 545, 106 S. Ct.
2056, 2064, 90 L. Ed. 2d 514, 529 (1986).



Id. Under the facts presented in Cofield, the court of criminal appeals held that the declarant's
spontaneous statement given to a law enforcement officer, even though it exposed her to criminal
liability, was not admissible against the defendant on trial. Id. at 957 (affirming judgment of court
of appeals). The court noted that there was no corroborating evidence to indicate that the statement
was "clearly trustworthy" in its assertion that the defendant smoked cocaine. Id. at 955. The
declarant was so situated--the cocaine was in her pocket--that she alone may have committed the
crime. Id. The declarant's statement to an arresting officer could have been calculated to curry
favor, shift or spread the blame, or divert attention away from her own culpability. Id.

 In Dewberry, the declarant had bragged to friends about a robbery and murder that
he and the defendant had committed. 4 S.W.3d at 750. The declarant did not testify at the
defendant's trial, but the state called witnesses to recount the declarant's out-of-court statements
about the crime. Over the defendant's objections, the trial court admitted the testimony under Rule
803(24), and the defendant was convicted of capital murder. In its opinion affirming the conviction,
the court of criminal appeals first determined that the statements were self-inculpatory in that the
witnesses recounted only spontaneous statements in which the declarant referred to "we," inculpating
both himself and the defendant for capital murder. Id. at 751. Second, the court examined the
evidence in detail for corroborating circumstances "sufficiently convincing to clearly indicate the
trustworthiness of the statement." Id. The salient facts proving trustworthiness were that (1) the
evidence showed the declarant and defendant acted in concert throughout commission of the murder;
(2) the declarant and defendant were seen together before and after the murder; (3) the declarant
made the statements before he or defendant became suspects in the murder; (4) the majority of
declarant's statements were made spontaneously or in response to casual inquiries; (5) the statements
were made to friends and acquaintances not connected to commission of the crime; (6) the
statements revealed intimate familiarity with the manner in which the victim was killed; and (7) the
witnesses saw the declarant and defendant in possession of the victim's property. Id. at 751-52. The
court concluded that the declarant's spontaneous, voluntary statements to friends exposing him to
criminal liability for capital murder were reliable and thus admissible against the defendant under
Rule 803(24). Id. at 752.

 In Guidry, the declarant told his girlfriend about the plans and subsequent commission
of a murder for hire in which the defendant participated. 9 S.W.3d at 147. At defendant's trial, the
state introduced the girlfriend's testimony recounting the declarant's version of events. Over the
defendant's objection, the trial court admitted the girlfriend's testimony and the defendant was
convicted of capital murder. Id. at 138, 147. The court of criminal appeals revisited the holding in
Dewberry and added an important qualification to the admissibility of the statement against penal
interest. The court recognized that, to be admissible, the statement had to be against the declarant's
own penal interest, not merely against the defendant's penal interest. Id. at 149. Therefore, the
Guidry court concluded that unless the statement inculpated the declarant to the same degree it
inculpated the defendant, it was inadmissible. Id. Consequently, all of the declarant's spontaneous
statements that pointed to the defendant as the sole or primary actor for criminal conduct were held
to be inadmissible by the court. (7) Id. For example, although the declarant admitted to participating
in the murder, he pointed to the defendant as the sole triggerman. The circumstances surrounding
the declarant's statements indicated that he made them spontaneously, in a non-custodial setting, to
his girlfriend--and yet they were not so equally against the declarant's and the defendant's interests
as to be sufficiently reliable. Id. Although the declarant's statements exposed him to potentially
equal criminal liability, his version of events could have given him a better plea bargaining position
or generated greater jury sympathy. Id. In a capital murder case where the potential sentences--life
imprisonment or death--are so disparate, there is strong motivation to gain even a marginal
advantage over other criminal actors.

 Although the court of criminal appeals has given us a framework for reviewing the
admissibility of statements against penal interest under Rule 803(24), all three cases involve a
spontaneous utterance. The court has yet to consider the admissibility of a confession made to law
enforcement during custodial interrogation and offered against a defendant who is not the declarant. 
In deciding that question however, we will apply the principles announced in Cofield, Guidry and
Dewberry. 


 A. Does the Flores Confession Meet the Self-Inculpatory Test?

 Applying these cases to the facts of the instant cause, we must first examine whether
the confession tends to expose the declarant to criminal liability. See Davis, 872 S.W.2d at 747. A
statement that is broadly self-inculpatory may nevertheless be inadmissible if it is blame shifting. 
Cofield, 891 S.W.2d at 956. Statements referring to "we," rather than "he," expose the declarant,
as well as the defendant, to criminal liability. Guidry, 9 S.W.3d at 149; Dewberry, 4 S.W.3d at 751.
However, even statements that expose the declarant to potential legal liability may be inadmissible
if they incriminate the defendant to a greater degree. Guidry, 9 S.W.3d at 149. 

 Flores admits that he: (1) drove to the victims' house; (2) took possession of a gun
he knew was an automatic; (3) entered the house; (4) entered the victims' bedroom; (5) fired three
shots; and (6) fled the scene. These admissions clearly expose Flores to some criminal liability.
However, read in its entirety, Flores's statement is less a "confession" than an attempt to shift blame
to the appellant as the primary criminal actor. Flores qualifies each of the admissions enumerated
above and minimizes his own culpability. According to Flores, when appellant woke him and asked
him for a ride, Flores did not know where they were going or for what purpose. Flores drove to the
victims' house, took possession of the gun and entered the house only under appellant's direction. 
Flores states that he fired only three shots, which is inconsistent with the expert testimony that one
gun was fired eight times and the other eleven times. Flores implies that the victims were fatally
wounded by appellant before he entered the garage and that he did not aim at the victims, but only
"covered the room," apparently to facilitate their getaway. Flores credits appellant alone with
planning the murders, providing the weapons and means of transportation, having a motive, firing
the initial shots at the two sleeping victims, driving the car upon flight, and concealing evidence. 
Portions of Flores's statement are clearly not self-inculpatory but rather directly incriminate
appellant.


 B. Particularized Guarantees of Trustworthiness

 Next we will examine the record for corroborating circumstances that "clearly
indicate the trustworthiness of the statement." Davis, 872 S.W.2d at 747-48. There is no bright line
test of trustworthiness. The court of criminal appeals has identified several factors to be considered:
(1) whether guilt of the declarant is inconsistent with guilt of the defendant; (2) whether the declarant
was so situated that he might have committed the crime; (3) the timing of the declaration; (4) the
spontaneity of the declaration; (5) the relationship between the declarant and the party to whom the
statement is made; and (6) the existence of independent corroborative facts. Dewberry, 4 S.W.3d
at 751. 

 Flores's confession was made at the Austin police station, during a custodial
interrogation on October 2, 1997--approximately thirty-three hours after the murders. The
confession initially recites that Flores was fully informed of his rights as follows: 


 I have the right to remain silent and not make any statement at all, and that any
statement I do make may be used against me at my trial;

 Any statement I make may be used against me in court;

 I have the right to have a lawyer present to advise me prior to and during any
questioning;

 If I am unable to employ a lawyer, I have the right to have a lawyer appointed to
advise me prior to and during any questioning;

 I have the right to terminate this interview at any time. 




The confession was given to two officers in the APD homicide unit. The typed confession recites
that Flores could read, but "not very well," and that the confession was read back to him by a third
officer. Flores was aware that appellant, Frizzell, and Gonzalez were also being questioned
separately by the police officers. According to Flores's confession, he had admitted his participation
in the murders to Frizzell. Therefore, Flores knew that the police were interviewing at least one
person who could implicate him in the crime. The setting and statutory warnings Flores received
would impress anyone with the gravity of the situation. Rule 803(24) requires that the statement
subject the declarant to criminal liability to such a degree that "a reasonable person in declarant's
position would not have made the statement unless believing it to be true." Tex. R. Evid. 803(24). 
In Flores's position, a reasonable person might have many motives other than truth for making such
a confession. A reasonable person might well have decided that he was already a murder suspect
and that a self-inculpatory statement could be used to his advantage. There is nothing about the
circumstances of Flores's confession that rebuts the presumption of inherent unreliability of a
confession as it pertains to another criminal actor's culpability. Cofield, 891 S.W.2d at 956.


 C. Confessions

 Our courts have recognized that criminal confessions are of questionable value:


We have learned the lesson of history, ancient and modern, that a system of criminal
law enforcement which comes to depend on the 'confession' will, in the long run, be
less reliable and more subject to abuses than a system which depends on extrinsic
evidence independently secured through skillful investigation.



Connor v. State, 773 S.W.2d 13, 13-14 (Tex. Crim. App. 1989) (quoting Escobedo v. Illinois, 378
U.S. 478 (1964)). 

 Confessions of another that incriminate the defendant on trial, even though self-inculpatory to the declarant, are presumptively unreliable. Lilly, 527 U.S. at 131; Bruton v. United
States, 391 U.S. 123, 136 (1968). (8) This presumption can be rebutted; however, it is unlikely when,
as here, (1) the state is involved in the taking of the confession; (2) the confession involves past
events; and (3) the confession has never been subjected to adversarial testing. See Lilly, 527 U.S.
at 137. Custodial confessions are highly suspect for several reasons. The declarant knows that
anything he says can be used against him in a court of law. However, by cooperating with the
authorities, he may plea bargain for a lesser charge or lighter sentence, or escape prosecution
altogether. (9) For this reason, the declarant is highly motivated to minimize his own culpability. See
id. at 131. Therefore, the non-self-inculpatory portions of a custodial confession cannot be
considered reliable. Id. at 131-32. In addition, custodial confessions are often made in response to
leading questions, which are generally prohibited on direct examination in a court proceeding. See
Lilly, 527 U.S. at 139.

 In contrast, statements are considered somewhat more trustworthy if made (1)
spontaneously; (2) in a non-custodial setting; or (3) to a person who is not engaged in law
enforcement. See Dewberry, 4 S.W.3d at 751-52. Whether a statement contains particularized
guarantees of trustworthiness is determined by examining only the circumstances in which the
statement was made. See Lilly, 527 U.S. at 137-38. Other corroborating evidence is no indication
of the statement's reliability. Id. The court must find affirmative proof to rebut the presumption that
the statement is unreliable. Guidry, 9 S.W.3d at 150.

 An examination of the record leads us to conclude that the circumstances in which
Flores's statement was made do not clearly indicate the trustworthiness of the statement for 
purposes of Rule 803(24). Flores's confession is presumptively unreliable. See Lilly, 527 U.S. at
131. It was made to police officers during a custodial interrogation. The State has not carried its
burden of showing the confession to be trustworthy, nor has the state rebutted the presumption that
Flores's confession was inherently unreliable. We hold, therefore, that the trial court erred in
admitting it. We now turn to an examination of whether the admission of Flores's confession
violated appellant's constitutional rights under the Confrontation Clause of the Sixth Amendment.

The Sixth Amendment Right to Confront Witnesses

 The criminal defendant's right to confront witnesses is a "fundamental right" and is
applicable to the States through the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 403
(1965). This encompasses the right to cross-examination of witnesses, the "greatest legal engine
ever invented for the discovery of truth." Lilly, 527 U.S. at 124 (quoting California v. Green, 399
U.S. at 158). In particular, an accomplice's confession "creates a special, and vital, need for cross-examination." Gray v. Maryland, 523 U.S. 185, 194 (1998). (10)

 The right of cross-examination is subject to exception only when the court can
ascertain that "adversarial testing would be expected to add little, if anything, to the statements'
reliability." Lilly, 527 U.S. at 125. Abrogation of the criminal defendant's right to cross-examine
witnesses is a denial of due process of law under the Fourteenth Amendment. Pointer, 380 U.S. at
405.

 We have already determined that the State failed to rebut the presumption that
Flores's statement is inherently unreliable as it pertains to appellant's culpability. Although Flores's
confession is self-inculpatory, the portions of the confession that refer to the appellant are mainly
self-serving and shift the blame to the appellant as the primary actor. Furthermore, the confession
is internally inconsistent. (11) "[C]ertainly no one experienced in the trial of lawsuits, would deny the
value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal
case." Pointer, 380 U.S. at 404 (citation omitted). Without an opportunity for cross-examination,
appellant was unable to challenge Flores's veracity and call the jury's attention to the weaknesses
and inconsistencies in his confession. There were no witnesses, other than appellant, available to
counter Flores's version of events. (12) Therefore, we hold that the introduction of Flores's statement
was a violation of appellant's Sixth Amendment right to confront and cross-examine the witnesses
against him.


Harm Analysis

 The admission of Flores's confession is a constitutional error that requires a harm
analysis. See Evans v. State, 534 S.W.2d 707, 710-11 (Tex. Crim. App. 1976); Muttoni v. State, 25
S.W.3d 300, 308 (Tex. App.--Austin 2000, no pet.). In the case of constitutional error, a court of
appeals must reverse a judgment of conviction unless it determines beyond a reasonable doubt that
the error did not contribute to the conviction. Tex. R. App. P. 44.2(a); Muttoni, 25 S.W.3d at 308. 
If, without the erroneously admitted evidence, the record contains adequate evidence of guilt, then
the error is harmless beyond a reasonable doubt. See Guidry, 9 S.W.3d at 152. 

 At trial, the State presented considerable circumstantial evidence linking appellant
to the crime. However, only Flores alleged that appellant planned the murders, provided the
weapons, entered the victims' house, and fired a gun. (13) There was no other testimony corroborating
those accusations. Furthermore, the neighbors' testimony placing appellant at the scene was subject
to cross-examination. Through cross-examination, appellant was able to point out discrepancies
between the statements the two neighbors made to police on the day of the murders. He was also
able to elicit the neighbors' earliest descriptions of the two suspects, which in some details did not
accurately describe Flores and appellant. Appellant's expert testified to the unreliability of
eyewitness identification of strangers whom one has seen only fleetingly and under stressful
circumstances. In contrast, Flores's confession unequivocally identified appellant as the primary
actor and, although presumptively unreliable, was clearly the most persuasive evidence of appellant's
guilt presented to a lay jury. Therefore, we conclude that the introduction of Flores's confession was
harmful to appellant and requires reversal. Our task remaining is to determine whether to remand
this case for a new trial or render a judgment of acquittal. To answer this question, we review the
legal sufficiency of the evidence. 


Legal Sufficiency of the Evidence

 The appellant's second point of error is that without Flores's confession, the evidence
was legally insufficient to support a conviction. (14) In reviewing the legal sufficiency of the evidence,
"the relevant question is whether, after viewing the evidence in the light most favorable to the
prosecution, any rational trier of fact could have found the essential elements of the crime beyond
a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); accord Patrick v. State, 906
S.W.2d 481, 486 (Tex. Crim. App. 1995); Staley v. State, 887 S.W.2d 885, 888 (Tex. Crim. App.
1994). For this review, we must consider all the evidence in the record, admissible and inadmissible. 
Wilson v. State, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999); Dewberry, 4 S.W.3d at 740; Johnson
v. State, 967 S.W.2d 410, 412 (Tex. Crim. App. 1998). If this Court finds that no rational trier of
fact could find beyond a reasonable doubt that the appellant is guilty, then we must reverse the
conviction and render a judgement of acquittal. See Muttoni, 25 S.W.3d at 308-09 (citing Burks v.
United States, 437 U.S. 1, 17-18 (1978); Greene v. Massey, 437 U.S. 19, 24 (1978)).

 Apart from Flores's confession, the State presented circumstantial evidence in its
effort to prove the elements of the charged offense. The testimony of the neighbor who identified
appellant in a line-up, along with the neighbor who saw two men flee the scene in a vehicle similar
to appellant's, even though challenged, placed appellant at the scene of the crime. Gonzales testified
that the two victims had stolen drugs and money from appellant, which provides appellant with a
motive. Gonzales also testified that appellant and Flores were acting nervous on the day of the
murders and appeared very interested in the news account of the murders. Appellant's Blazer was
found hidden in another part of the city, which could be interpreted as an attempt by appellant to hide
evidence of his guilt. This evidence, even without Flores's confession, is sufficient for a trier of fact
to have found appellant guilty beyond a reasonable doubt. Additionally, applying the Dewberry
standard and considering Flores's inadmissible confession, supplies abundant evidence of appellant's
guilt. Therefore, in viewing the evidence in the light most favorable to the State, the evidence was
legally sufficient to sustain the jury's verdict of guilt. Appellant's second point of error is overruled.

CONCLUSION

 Despite holding that the evidence presented at trial was legally sufficient for a finding
of guilt beyond a reasonable doubt, we reverse and remand based on our holding that the admission
of Flores's confession was a constitutional error which was harmful to the appellant. We remand
to the trial court for a new trial.



 

 Mack Kidd, Justice

Before Justices Kidd, Puryear and Dally*

Reversed and Remanded

Filed: September 13, 2001

Publish

* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1.   "Hearsay is not admissible except as provided by statute or these rules or by other rules
prescribed pursuant to statutory authority. Inadmissible hearsay admitted without objection shall not
be denied probative value merely because it is hearsay." Tex. R. Evid. 802.
2.   The Rule states as follows:


The following are not excluded by the hearsay rule, even though the declarant is
available as a witness:


 . . . .


(24) Statement Against Interest. A statement which . . . so far tended to subject
the declarant to . . . criminal liability . . . that a reasonable person in declarant's
position would not have made the statement unless believing it to be true. In
criminal cases, a statement tending to expose the declarant to criminal liability
is not admissible unless corroborating circumstances clearly indicate the
trustworthiness of the statement.


Tex. R. Evid. 803(24).
3.   At trial, appellant also challenged admission of the statement as a violation of his rights
under article I, section 10 of the Texas Constitution and article 1.05 of the Texas Code of Criminal
Procedure. However, on appeal appellant asserts only a violation of his rights under the Sixth
Amendment.
4.   For example, Sir Walter Raleigh was convicted of treason based on the out-of-court
confession of Lord Cobham, an alleged co-conspirator. Lilly v. Virginia, 527 U.S. 116, 141 (1999)
(Breyer, J., concurring). When Raleigh asked that his accuser face him, he was rebuffed: "The law
presumes, a man will not accuse himself to accuse another." Id. at 142 (quoting Trial of Sir Walter
Raleigh, 2 How. St. Tr. 19 (1816)). 
5.   Although Lilly is a plurality opinion with four concurrences, the Court was unanimous in
its judgment that the admission of a declarant's "untested" custodial statement was a violation of the
defendant's rights under the Confrontation Clause. Lilly, 527 U.S. at 139-40. The declarant
admitted participation in a two-day crime spree, but alleged that the defendant instigated a car-jacking and shot the car's owner. The declarant invoked the Fifth Amendment and refused to testify
at the defendant's trial. Over the defendant's objection, the trial court admitted a statement the
declarant had made to the police after his arrest under the "against penal interest" exception. The
Supreme Court of Virginia affirmed the defendant's convictions, including one for capital murder. 
The United States Supreme Court unanimously reversed and remanded for a determination of
whether the unconstitutional admission of the statement was harmless beyond a reasonable doubt. 
Id. at 140.
6.   The federal rule considered by the United States Supreme Court in Williamson is very
similar to Rule 803(24) of the Texas Rules of Evidence. Cofield v. State, 891 S.W.2d 952, 956 (Tex.
Crim. App. 1994).
7.   The court affirmed the conviction because there was ample other evidence of the
defendant's guilt, rendering the error harmless. Guidry v. State, 9 S.W.3d 133, 152 (Tex. Crim. App.
1999).
8.   In a joint trial involving two co-defendants, one defendant's confession was admitted with
a limiting instruction to the jury that it could only be considered as evidence of that defendant's guilt
and not as evidence of his co-defendant's guilt. Bruton v. United States, 391 U.S. 123, 124-25
(1968). The confessor did not testify and the Court held that the limiting instruction was not "an
adequate substitute for [the co-defendant]'s constitutional right of cross-examination." Id. at 137. 
In the case before us, appellant did not even have the benefit of such a limiting instruction. To the
contrary, the statement was admitted for the very purpose of proving appellant's guilt. Further,
appellant did not have the opportunity to cross-examine the declarant or to challenge the
voluntariness of the declarant's confession.
9.   For example, in this case Flores was offered use immunity at appellant's trial.
10.   In fact, the United States Supreme Court originally followed the rule excluding hearsay
statements against penal interest, holding instead that under federal law only hearsay statements
against pecuniary (and perhaps proprietary) interest were sufficiently reliable to be admitted against
a defendant who was not the declarant. Lilly, 527 U.S. 129. Most states followed a similar rule until
fairly recently. Id.
11.   For example, Flores stated alternatively that when he entered the victims' room (1) "Frank
was on the bed but rolling off on to the floor," and (2) "Frank was the first one that set up, he had
been asleep and he sat up and then started to turn." The first statement implies that the victim had
been shot by appellant, perhaps fatally, before Flores entered the room. The second statement
implies that the victim awakened, and thus was alive, when Flores entered the room. Through cross-examination appellant could have challenged these statements and the inference that appellant fired
the fatal shots.
12.   The error in admitting Flores's confession against appellant is compounded by the fact that
this implicates appellant's constitutional right to remain silent under both the federal and state
constitutions. See U.S. Const. amend. V; Tex. Const. art I, § 10. Cf. Nowlin v. State, 507 S.W.2d
534, 536 (Tex. Crim. App. 1974).
13.   Again we note that without an opportunity to cross-examine Flores, appellant could rebut
Flores's confession only by testifying. The Fifth Amendment provides that a criminal defendant
cannot be compelled to testify as "a witness against himself." U.S. Const. amend V; see also Tex.
Const. art. I, §10.
14.   Appellant also challenges the factual sufficiency of the evidence. Because we have already
determined that reversal is warranted, appellant will receive at least the relief of a new trial which
he seeks under this point of error. Therefore, an examination of the factual sufficiency of the
evidence would be redundant.